## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES L. CULVER, d/b/a EIFS GUY | : | No. 3:06cv438 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| LABOR OCCUPATIONAL SAFETY & | : | |
| HEALTH ADMINISTRATION, and | : | |
| DOES 1 through 10, Inclusive | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion to dismiss plaintiff's complaint (Doc. 4). The matter has been fully briefed and is ripe for decision.

## I. Case Background

Plaintiff is a third-generation construction subcontractor with decades of experience. (Statement of Claim (Doc. 1) at 4). He has operated his own business for thirty years. (Id.). On July 8, 2003, Russell White, a Compliance and Safety Health Officer (CSHO) for Defendant United States Occupational and Safety Administration (OSHA) visited plaintiff's job site in Kingston, Pennsylvania. (Id. at 1). The inspector made photographs and video images of the site. (Id.) On or about August 18, 2003, plaintiff received citations related to this inspection. (Id.). On September 3, 2003, plaintiff attended an informal hearing with Andrew J. Hedesh, an OSHA representative. (Id.). After this hearing, plaintiff entered into a settlement

agreement with the agency. (Id.). That agreement reduced his penalty from $2,700 to $180. (Id.). Plaintiff contends that he executed this agreement because he believed he had no choice and feared the delinquency fees, interest, and other penalties that would result if he resisted paying his fines. (Id.).

More than a year later, on October 5, 2004, plaintiff filed a complaint in this court against the defendants. (Id.); See also Culver v. United States Department of Labor Occupational Safety and Health Administration (No. 04cv2197, Doc. 1). This seven-count cause of action alleged violations of plaintiff's rights under the United States and Pennsylvania Constitutions, made various claims under the Federal Tort Claims Act, and alleged that the defendants had violated the Electronic Freedom of Information Act by improperly posting citations against the plaintiff on the Agency's website. (Id.). On June 20, 2005, we issued an order dismissing the plaintiff's claims without prejudice, finding that plaintiff had failed to exhaust his administrative remedies and thus had no claim under the United States Constitution or the Federal Tort Claims Act, and that no private cause of action exists under the Pennsylvania Constitution. (Memorandum and Order in case No. 04cv2197 (Doc. 14)).

On July 14, 2005, plaintiff filed an administrative claim for damage, injury, or death against OSHA, alleging that the citations plaintiff received were "false, misleading and unsubstantiated." (Statement of Claim, Exhibit A). Plaintiff averred that as a result of the agency's publication of this improperly obtained citation he suffered damages of more than $400,000. (Id.). Plaintiff made this complaint by

2

filing Standard Form 95, a form used by those asserting a claim against a federal agency, with OSHA  by certified mail.  (Id.).

Plaintiff filed the present complaint on March 1, 2006, alleging that six months had passed since the filing of his administrative claim and the agency had failed to take action. (Statement of Claim at 1).  That complaint makes substantially the same claims as his original complaint, though he no longer includes allegations that the Agency violated his constitutional rights.  (Id.).  Instead, plaintiff raises a series of tort claims based on the alleged failure of the Agency to follow proper procedures, though he uses much of the same language and the same allegations raised in the previous complaint.  (Id.).  Plaintiff raises a cause of action for trespass, contending that OSHA inspectors entered property of which he had constructive possession without his permission.  (Id. at 2).  Count 2 claims abuse of process by the CSHO inspector in issuing citations.  (Id. at 3).  The third cause of action alleges falsification of government records.  (Id.).  A fourth combines the tort of invasion of privacy through portrayal of plaintiff in a false light with an allegation that defendants violated the Electronic Freedom of Information Act by publicizing plaintiff's citations without proper notice.  (Id. at 5).  His final cause of action raises a claim of intentional infliction of emotional distress as a result of outrageous conduct by OSHA in issuing the citations.  (Id. at 6).

On May 18, 2005, the defendant filed a motion to dismiss the complaint under Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction over the case and

Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, we will grant the defendant's motion.

## II. Legal Standard

Under FED. R. OF CIVIL PRO. 12(b)(1), this court dismisses cases for "lack of jurisdiction over the subject matter." FED. R. CIV. PRO. 12(b)(1). The standard for surviving a motion to dismiss under Rule 12(b)(1), however, is not a difficult one to achieve: "'dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false.'" Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989). Instead, courts may "dismiss a claim for lack of jurisdiction if the federal claim is 'made solely for the purpose of obtaining jurisdiction' or if the claim is 'wholly insubstantial and frivolous.'" Kullick v. Pocono Downs Racing Ass'n, 816 F.2d 895 (3d Cir. 1987) (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946). To justify dismissal, "the claim must be 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1946).

The defendant also moves us to dismiss this case under FED. R. CIV. PRO. 12(b)(6). When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the

benefit of all reasonable inferences that can fairly be drawn therefrom and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## III. Exhaustion of Administrative Remedies

Plaintiff raises his claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2675. Under that statute, a plaintiff is required to exhaust his administrative remedies before filing suit. See 28 U.S.C. § 2675. Plaintiff admits that he filed a claim through administrative channels on July 12, 2005, and attaches a copy of that claim to his complaint. (See Statement of Claim, Exhibit A). As of March 1, 2006, plaintiff had received no response from the Agency. (Id. at 1). Section 2675(a) of the FTCA establishes that "the failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a). Plaintiff has thus exhausted his remedies and met the requirements of the FTCA to bring suit in federal court. See, e.g., Reo v. United States Postal Service, 93 F.3d 73, 75 (3d Cir. 1996) (holding that after plaintiff files an administrative claim "if the agency denies the claim or does not make a final disposition within six months, the claimant may then file suit in federal court.").

## IV. Waiver of Certain Claims

Nevertheless, plaintiff's dealings with OSHA render him unable to bring suit

based on the citations the agency issued to him.[1]  The attachments to plaintiff's

claim indicate that he waived his right to challenge the agency's action in this court.[2]

On September 13, 2003, plaintiff and his attorney met with Andrew J. Hedesh, a

representative of the Occupational Safety and Health Administration to discuss the

citations recently issued to the plaintiff.  (Statement of Claim, Exhibit B).  After

negotiations, the Agency reduced the fines the plaintiff faced from $2700 to $180.

(Id.).  In exchange for that reduction, plaintiff agreed to abate the conditions that led

to the citation and "waive[d] [his] rights to contest the above citation(s) and

penalties."  (Id.)  Plaintiff contends that this agreement constituted a settlement of

---

[1]Plaintiff's complaint against ten unnamed OSHA agents is dismissed.  Plaintiff offers no allegations against these agents, but instead names a specific OSHA employee whose actions lead to his complaint.  He neither alleges any bad acts by the unnamed defendants, nor avers that these defendants, presumably working in the employ of the Agency, were acting in any fashion outside of the scope of their employment.  Since employees acting within the scope of their employment are immune from suit under the Federal Tort Claims Act, we will dismiss the plaintiff's claims against these defendants. See Simpkins v. Shalala, 999 F. Supp. 106, 119 (D.D.C. 1998) (finding that under the amended Federal Tort Claims Act "a plaintiff's sole remedy for action taken by employees acting within the scope of their duties is against the government, even if the government would not be liable due to sovereign immunity.").

[2]Since we here evaluate a Rule 12(b) motion to dismiss, the court can take notice of evidence beyond the pleadings in order to determine whether the court has jurisdiction over the case.  See Mortensen v. First Federal Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977) (holding that "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating the merits of jurisdictional claims.").  Accordingly, we examine the attachments to plaintiff's complaint and find within them evidence that plaintiff waived large portions of his claim in the agreement he signed with the agency.

the fines, not the underlying complaints.  (Brief in Opposition to Plaintiff's Motion to Dismiss (Doc. 12) at 2).  Plaintiff also contends that the conference that produced the agreement was unfair because the CSHO who issued the citations was not present and plaintiff could not challenge the citations.  (Id. at 2).  The most damning allegations in the citations–that he was not competent to inspect the scaffolding–also did not have fines attached to them, leaving him unable to dispute their contentions.  (Id.)  Further, he says, OSHA posted the citations on-line, in violation of the agreement.[3]  (Id.).

We find this agreement valid and hold that plaintiff waived his right to sue in federal court to contest the citations and penalties.  Under the Federal Tort Claims Act, the law of the forum state determines the validity of a release.  See, e.g. Reo v. United States Postal Service, 98 F.3d 73, 76 (3d Cir. 1996) (holding that "the basic purpose of the FTCA is to subject the United States to tort liability under state law to the same extent as to private individuals.  State law thus governs both the creation of liability and the effect of a purported release of liability.").  State law applies to releases signed both "before administrative claims have been undertaken and after suits have been filed." (Id.)  The release in this case, signed before the plaintiff brought his claim in federal court, is thus subject to review under Pennsylvania law.

---

[3]We note that nothing in the agreement signed on September 3, 2003 indicates that a provision of the agreement precludes OSHA from publicizing the citations.  Further, the defendant knew the contents of the citations and had the opportunity to contest their validity before executing the agreement.

7

Plaintiff's complaint makes no allegations which, if proved true, would lead us to conclude that the release he signed was invalid. Under Pennsylvania law, the meaning of a release "must be determined by its language, given its ordinary meaning unless a different meaning was clearly intended." In re Estate of Bret J. Bodnar, 472 Pa. 383, 387 (1977). Such analysis must take notice that "a release ordinarily covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given." (Id.) Releases represent the choice of the parties to end the controversy between them, and "in doing so, they may yield, insist, or reserve such right as they choose." Buttermore v. Aliquippa Hospital, 522 Pa. 325, 329 (1988). Courts will not inquire into the adequacy for either party of the terms of the release absent allegations of "fraud, accident or mutual mistake." Id. at 330. Such allegations must "show fraud or mistake by clear, precise and convincing evidence." Mulholland v. Pittsburgh National Bank, 209 A.2d 857, 865 (Pa. 1965).

In this case, the terms of the release are clear: "The employer, by signing this informal agreement, hereby waives its rights to contest the above citation(s) and penalties." (Statement of Claim, Exhibit B). This agreement makes clear that plaintiff exchanged his right to contest the citations in exchange for a reduction in his penalties from $2700 to $180. (Id.). The plaintiff contends that "he settled the fines, not the citations," but this runs contrary to the clear language of the agreement,

8

which covers both the penalties and the citations.[4]   (See Plaintiff's Brief in Opposition

to Defendant's Motion to Dismiss (Doc. 12) at 2).   From that language, it is clear that

the parties agreed to reduce the fines in exchange for plaintiff's promise not to

contest them.   The ordinary meaning of the release, then, waives the right of the

plaintiff to contest the fines or citations he received after the inspection.   Without

allegations of fraud or mistake, the release is valid under Pennsylvania law.

The plaintiff does make some allegation of fraud or mistake in this case.   First,

he complains that the original OSHA citations were procured by "fraud committed by

OSHA."   (Id. at 2).   This complaint, however, is about the citations, not the process

used to procure the release.   We could not invalidate the agreement on those

grounds.   Second, plaintiff contends the settlement conference that produced the

release was an "illusion."   (Id.).   This appears to be an allegation of fraud or mistake,

since plaintiff contends he left the conference thinking that "not only were the fines

being reduced but the seriousness of the citations were to also be amended upon

---

[4]Plaintiff also contends that another provision of the agreement, reading that "by entering into this agreement, the employer does not admit that it violated the cited standards for any litigation or purpose other than a subsequent proceeding Under the Occupation Safety and Health Act," should serve as grounds for invalidating the release. Brief in Opposition, at 2.   Apparently, plaintiff contends that this language makes the release illogical, since he should not have been cited if he failed to admit to the violations for which he was cited.   This argument misunderstands the nature of a release:  the sides trade something of value in exchange for ending the case without having to engage in protracted litigation, and leave open the ultimate question of who was legally liable.  The provision plaintiff cites is actually designed to protect him in any litigation that might result from the scaffolds which were cited by OSHA: a plaintiff in a suit against him might point to the citations as evidence that he admitted to running a dangerous workplace, but he could point to the fact that he never acknowledged the truth of the allegations and should not be held liable based on that document.

9

execution of the 'Agreement' and payment of the reduced fines." (Id.).  Plaintiff may here allege mistake, but he does not contend that the mistake was mutual.  Under Pennsylvania law, "if a mistake is unilateral and not due to the fault of the party not mistaken but rather to the negligence of the party who acted under the mistake, the unilateral mistake affords no basis for rescinding the release."  Holt v. Department of Public Welfare, 678 A. 2d 421, 423 (Pa. Commw. 1996).  Here, the plaintiff does not claim that defendant was mistaken as to the terms of release, but only that he misunderstood them.  He offers no allegation that the defendant contributed to his confusion.  The plaintiff was represented by counsel in the proceeding that produced the release.  The plaintiff thus makes no claim that would invalidate the release.

Plaintiff's allegation of fraud also could not invalidate the release.  He offers no specific allegation that defendant misrepresented any terms of the release, or that the document he signed was not the one to which the parties agreed.  Apparently, he argues that the agency committed fraud by not explaining to plaintiff the legal effect of the release.  This is not an allegation of fraud; even if plaintiff were to prove this claim, the release would not be invalid.  Failure on the part of one party to explain fully the terms of a release to the other party does not constitute fraud.  See Wolbach v. Fay, 412 A.2d 487, 488 (Pa. 1980) ("Since there is no allegation of actual misrepresentation and appellant had an opportunity to read the release and admitted he understood it, we find there was no fraud.").

The plaintiff has therefore waived his right to contest the citations or penalties.

10

Because our court has jurisdiction only over "cases" and "controversies" that "ha[ve] assumed 'such a form that the judicial power is capable of acting on it.'" we have no authority to hear plaintiff's claims that arise from the citations he received.   United States Constitution Art. III §2 Cl. 1; In re Sommers, 325 U.S. 561, 567 (1945) (quoting Osborn v. Bank of the United States, 9 Wheat 738, 819 (1824)). Accordingly, we will grant defendant's motion to dismiss under FED. R. CIV. PRO. 12(b)(1) on those claims that arise from plaintiff's dispute of the citations.   These decisions apply to Plaintiff's challenges to the OSHA citations; as his complaint offers more than a challenge to the citations, however, we will examine each cause of action in turn.   We will first explain whether the claim serves as a challenge to the citations, and where there is no challenge to the citation, whether that claim states a cause of action upon which relief can be granted.

## V.  First Cause of Action: Trespass

Plaintiff brings a tort claim for trespass against the defendant.  (Statement of Claim at 2).  Defendant's inspector, the plaintiff contends, entered property which he held under constructive possession without his consent and with the intent to trespass.  (Id.).  The plaintiff contends that this trespass was motivated by defendant's desire to harass and damage a non-union contractor.  (Id.).  After the alleged trespass, defendant issued a citation to the plaintiff, in addition to $2700 in fines.  (Id.).  This behavior allegedly caused plaintiff "humiliation, embarrassment, mental and physical pain and anguish."  (Id. at 3).  Plaintiff is here complaining about

the procedure the agency followed in issuing him citations.  Plaintiff alleges that the

inspector's apparently unauthorized presence at his jobsite constituted a trespass,

which caused him harm.  Both the alleged trespass and the harm that resulted from

it, however, are inextricably linked to the citations.  Neither the alleged trespass nor

the damage that it caused plaintiff would have occurred if not for OSHA's

investigation and citation procedures.  Since no trespass and no injury would have

occurred absent the citations, plaintiff has waived his right to this claim and we will

dismiss it based upon the aforementioned release.

Even were we to find that plaintiff's trespass action is not barred by his

agreement to waive such claims, we would find that defendant is immune from suit

for tort claims of trespass because the agency's inspectors, engaging in a

discretionary function, are immune from tort suit under the FTCA.

The discretionary function exemption of the Federal Tort Claims Act maintains

federal employees immune from suit "based upon the exercise or performance or the

failure to exercise or perform a discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the discretion involved be

abused, bars plaintiff's claim in this matter."  28 U.S.C. § 2680(a).  The United States

Supreme Court has determined that "the discretionary function exception insulates

the Government from liability if the action challenged in the case involves the

permissible exercise of policy judgment."  Berkowitz v. United States, 486 U.S. 531,

537 (1988).  If "established governmental policy, as expressed or implied by statute,

12

regulation, or agency guidelines" gives a government agent "discretion, it must be presumed that the agent's acts are grounded in policy when exercising discretion." United States v. Gaubert, 499 U.S. 315, 324 (1991). A two-part test exists in the Third Circuit to determine whether a function is discretionary: first, "a court must consider whether the action is a matter of choice for the acting employee." Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 284 (3d Cir. 1995). Second, a court must determine whether the decision made was one of the type the exception was designed to shield. Id. To make this determination, the court must decide that the action was "'based on considerations of public policy'" and "'susceptible to policy analysis.'" Id. (quoting Berkowitz, 486 U.S. at 537).

The decision to inspect, issue, post, publish and modify citations are all discretionary decisions which OSHA regulations and the OSH Act grant agency employees the power to make. See, e.g., 29 U.S.C. § 657 (a)(2) (authorizing the Secretary of Labor to inspect workplaces for unsafe conditions); 28 U.S.C. §§ 658(a)-(b) (giving the Secretary of Labor authority to issue and post citations for violations). These statutes do not contain mandates which give an inspector no choice in determining that a citation is necessary and making the discretionary function exception inapplicable. See Berkowitz, 486 U.S. at 536 (holding that "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."). Instead, they are "grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324;

13

See 29 U.S.C. §§ 651(b), 651(b)(3) (stating that the purpose of the OSH Act was "to assure as far as possible every working man and woman in the Nation safe and healthful working conditions" in part by "set[ting] mandatory occupational safety and health standards."). An agent empowered to inspect a workplace and issue citations to employers determined to be maintaining an unsafe workplace is an agent using her discretion to carry out the regulatory purpose of the Agency. That agent must evaluate workplace conditions according to a set of guidelines, amd is not merely an operator with no choice in how to proceed in the inspection. Indeed, the fact that the agency has developed a procedure to challenge citations demonstrates the interpretive and discretionary nature of the inspector's actions. The Agency is therefore immune from suit based on inspectors' actions, regardless of whether they abused their discretion in entering the workplace. We therefore will dismiss this claim for lack of jurisdiction under FED. R. CIV. PRO. 12(b)(1).

## VI. Second Cause of Action: Abuse of Process

Plaintiff contends that defendant brought false and defamatory citations against him in order to damage his business. (Statement of Claim at 3). The defendant did so, the plaintiff claims, to harm the business of a non-union contractor and aid those who used organized labor. (Id) Plaintiff styles this complaint "abuse of process." (Id.) We will dismiss this claim as well. Here again, the allegations center around the contents of the citations and their influence on plaintiff's reputation, not on a matter unrelated to the inspection of plaintiff's job site. The plaintiff's complaint

14

is also not with the process used to arrive at the citations, but with the contents of the citations. Accordingly, this claim is an attempt to challenge the citations, not a free-standing complaint against the agency. Plaintiff has again waived this claim in his agreement with OSHA reducing his fine, and we will dismiss it.

Even if we were to conclude that plaintiff had not waived his claims, we would find that the FTCA makes the inspectors who allegedly defamed plaintiff immune from suit under that act. The Federal Tort Claims Act waives the government's sovereign immunity against tort claims with several exceptions. One of those exceptions is for claims of abuse of process. See 28 U.S.C. §2680(h). The actions of "investigative or law enforcement officers" who are "empowered by law to execute searches, to seize evidence, or to make arrests" do not enjoy this immunity, however. Id. Under the law of this circuit, OSHA inspectors are not investigative or law enforcement officers. In the Third Circuit, "employees of administrative agencies, no matter what investigative conduct they are involved in," are not considered investigative or law enforcement officers. Matsko v. United States, 372 F.3d 556, 560 (3d Cir. 2004) As a result, the OSHA compliance officer is immune from suit under the FTCA. Even if this exception to the FTCA did not apply, we would still find defendants immune for the reasons articulated in Part V, supra.

## VII. Third Cause of Action: Falsification of Government Records

Plaintiff alleges that defendant's employees falsified inspection records in several ways. (Statement of Claim at 4) The citations, plaintiff says, incorrectly

state that inspections occurred between 7/8/03 and 8/7/03. (Id.). This implies, plaintiff says, that "the job site was inspected several times between said dates," or at least on both of those dates. (Id.). Plaintiff avers that the site was inspected only once, on July 8, 2003. (Id.). Plaintiff also avers that the record was falsified because the plaintiff was cited for failing to ensure that each employee who worked on scaffolding had been trained by qualified expert personnel. (Id.). Plaintiff points to his decades of experience supervising job sites as evidence that he was a person qualified to train workers on scaffolding. (Id.). Another item in that same citation found that the scaffolding was not inspected by a an individual competent to assure safety. (Id.). Plaintiff argues that his experience qualified him for this task, and that failure of the OSHA inspector to acknowledge this meant the citation had been falsified. (Id.). Plaintiff also complains that the inspector was unqualified by experience or training to assess the condition of this scaffolding, and that the inspector examined scaffolding not currently in use. (Id.). Thus, plaintiff contends that the citations against him were "based on false reports about his character and ability," and that "they were not in good faith, were wanton, wilful and intentional." (Id. at 4-5).

Here, plaintiff complains about the citations he received, which he feels were illogical, contrary to OSHA regulations, and unfair. Plaintiff engaged in an administrative procedure in relation to this matter, however, and the result of that procedure—an agreement to reduce fines in exchange for a waiver of plaintiff's right

to challenge the outcome of the proceedings–means that he cannot file a claim in this court.  We will dismiss this claim based on that agreement because there is no case or controversy over which we have jurisdiction for this matter.  Further, the discretionary function exception makes the inspectors immune from suit based on the preparation of these reports.  See *supra*, part V.

Even if we could find that this court had jurisdiction to hear the case, we would find that plaintiff's claim does not state a cause of action upon which relief could be granted.  Plaintiff apparently argues that he suffered financial hardship due to the defendant's falsification of government reports.  These alleged falsehoods led to an adverse government action against the plaintiff, and the plaintiff apparently contends this creates a cause of action against the government.  The plaintiff does not allege, however, any actual falsehoods against OSHA's inspectors.  He appears offended that an inspector did not credit his years of experience in assessing his qualifications, and failed to evaluate the scaffolding in question under proper conditions.  He does not allege, however, that the inspector reported conditions contrary to what he had seen, or that the inspector falsified information after he took it down.  Instead, the inspector insulted the plaintiff's experience and skill.  While infuriating, this does not amount to the sort of falsification which might lead to recovery for the plaintiff.  Similarly, the discrepancies plaintiff points to about how many inspections took place and on when occurred are not allegations of deliberate falsehoods.  He does not point to portions of the documents that were altered, but

17

simply argues that they have been wrongly interpreted.  This is not an allegation of

falsification, and plaintiff fails to state a claim upon which relief could be granted.

## VIII.  Fourth Cause of Action: Invasion of Privacy–False Light Violation of the Electronic Freedom of Information Act

Plaintiff's fourth cause of action, "invasion of privacy–false light, violation of the

electronic freedom of information act," similarly does not state a cause of action

upon which relief can be granted.  (<u>Id.</u> at 5).  The plaintiff apparently seeks to sue

defendant for giving

> publicity to a matter concerning another that places the other before the public
> in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a
> reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard to the falsity of
> the publicized matter and the false light in which the other would be placed."
> Rest. 2d of Torts 552(e).  (Statement of Claim at 5).

Plaintiff claims defendant committed this tort by publicizing on its website information

that "plaintiff was unqualified and incompetent for purposes of his business," which

was "highly offensive to Plaintiff and would be to any reasonable person."  (<u>Id.</u>).  This

publication allegedly occurred in violation of stated OSHA policy and was done with

the intent to harm plaintiff.

Again, the plaintiff's complaint here is with the citations themselves; claims

that the citations portrayed him in a false light and were made in violation of OSHA

procedure are mere pretext to challenge the outcome of the inspections.  The

plaintiff signed a valid agreement not to contest the citations in exchange for a

18

considerable reduction in the fine he owed.  The defendant is also immune for these

actions related to inspection and citation of the work site under the FTCA.  See

supra, Part V.  Accordingly, we will dismiss this claim for lack of jurisdiction under

FED. R. CIV. PRO. 12(b)(1).

Even if plaintiff had not waived his claims, he could not state a cause of action

against the defendant for failing to follow proper procedures in posting complaints to

its website.  Plaintiff's complaint, read generously, alleges that defendant made

public the fact that OSHA inspectors visited plaintiff's job site.  Nowhere, however,

does plaintiff specifically allege where or when defendant posted the results of that

inspection.  According to his complaint, plaintiff received an OSHA citation on

August 14, 2003.  (Statement of Claim at 5)  On or about July 25, 2003 and August

8, 2003, plaintiff received letters from U.S. Compliance Systems, Inc., an Ohio

Company.  (Id.)  These letters noted that plaintiff had recently been the subject of an

OSHA inspection and offered to assist him with any problems that arose from that

inspection.  (Id.)  Plaintiff avers that when contacted about these letters, U.S.

Compliance stated that information about plaintiff's inspection had been obtained

from OSHA's website.  (Id.)  Plaintiff apparently contends that this statement shows

that OSHA published his citation to its website, and that in doing so knowingly or

recklessly portrayed him in a false light.

Plaintiff does not offer allegations upon which relief could be granted here.  He

does not allege that he visited the OSHA website and found his citations posted

19

before regulations allowed the agency to do so.  Instead, he points to two letters that state merely that "it has come to our attention that OSHA has visited one of your jobsites," and urge the recipient to contact the company "if you've got questions about your company's recent OSHA inspection, have received citations and want to get maximum reductions in penalties or your [sic] looking for an effective way to stop future costly citations." (Statement of Claim at Exhibit C).  The letter makes no reference to an actual OSHA citation, nor do they inform the recipient of how the company became aware of the information.  (Id.).  Plaintiff does not allege that anyone saw the citations, but merely that he received correspondence about citations he may have received.  The plaintiff therefore makes no specific allegations that plaintiff published the results of his inspection anywhere, and thus has made no claim upon which relief could be granted.

Similarly, in the describing a "contact" with U.S. Compliance about the OSHA inspection, plaintiff's complaint alleges that the company obtained the information from the OSHA website.  (Id. at 5).  This allegation merely asserts that U.S. Compliance received information that an inspection occurred from the website, not information about a citation.  U.S. Compliance may have simply been aware of a site visit, and wrote to inquire if any adverse action had occurred which the plaintiff would like to challenge.  More important, even if OSHA did publish the citations, plaintiff offers no allegation that defendant did not believe the violations claimed in the citation to be true or behaved recklessly with regard to their truth.  Merely publicizing

20

citations with which the plaintiff disagrees is not sufficient to make out a claim that defendant knowingly portrayed plaintiff in a false light.

Plaintiff also fails to state a claim under the Electronic Freedom of Information Act, 5 U.S.C. § 552(a)(2)(E).  Plaintiff appears to contend that defendant publicized his citations before he received notice of them and without giving him an opportunity to respond.  He alleges that this action violated his right under the Act to "actual and timely notice" of procedures against him.  (Statement of Claim at 5).  The posting also apparently violated agency rules against posting citations less than 30 days after the department issues them.  Plaintiff seems to refer to 5 U.S.C. §252(a)(2)(E) in making this claim, but he cannot make a case out based on that provision. Section 252(a)(2)(E), which  refers to documents which agencies are required to publish and limits those disclosures to protect privacy, also discusses the effect of agency decisions as precedent.  See 5 U.S.C. § 252(a)(2)(E).  The provision notes that "a final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used or cited as precedent by an agency, against a party other than the agency only if–(i) it has been indexed and either made available or published as provided by this paragraph; or (ii) the party has actual and timely notice of the terms thereof."  Id.  This section does not apply to plaintiff's claim; he is not complaining about too little notice or a lack of publication of agency precedent, but of too much publication.  Since the provision does not apply, plaintiff cannot obtain any relief under that statute, and he fails to

state a claim upon which relief can be granted.  We will therefore dismiss the plaintiff's fourth cause of action.

## IX.  Fifth Cause of Action: Intentional Infliction of Emotional Distress

We will likewise dismiss plaintiff's fifth cause of action for intentional infliction of emotional distress.  (Statement of Claim at 6).  Plaintiff alleges that defendant committed outrageous conduct by filing false documents "alleging Plaintiff to be incompetent and unqualified in his stated profession" and publishing those documents on the Internet, and that this conduct caused him severe emotional and physical trauma.  (Id.).  Because issuing and compiling citations are discretionary acts, defendants are immune from tort suit for this action under the discretionary function exemption of the Federal Tort Claims Act, "whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); see Gaubert, 499 U.S. (holding that "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.").  We will therefore dismiss this claim lack of jurisdiction under FED. R. CIV. PRO. 12(b)(1).

## X.  Conclusion

We will therefore grant the defendant's motion and dismiss the plaintiff's complaint under FED. R. CIV. PRO. 12(b)(1) and 12(b)(6).  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES L. CULVER, d/b/a EIFS GUY    :    No. 3:06cv438
         Plaintiff    :
                               :    (Judge Munley)
                               :
              v.    :
                               :
UNITED STATES DEPARTMENT OF    :
LABOR OCCUPATIONAL SAFETY &    :
HEALTH ADMINISTRATION, and    :
DOES 1 through 10, Inclusive    :
        Defendants    :

## ORDER

**AND NOW**, to wit, this ___3rd___ day of November 2006, the defendant's

motion to dismiss plaintiff's complaint (Doc. 4) is hereby **GRANTED**.  The clerk of

court is directed to close the case.


                            **BY THE COURT**


                            **s/ James M. Munley**
                            **James M. Munley**
                            **United States District Court**